deUNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| LINDA COOLLICK,<br>        Plaintiff, | :<br>:<br>: |
| v. | :     3:08-cv-1233 (WWE) |
| | : |
| ABIGAIL HUGHES,<br>        Defendant. | :<br>:<br>: |

**MEMORANDUM OF DECISION ON
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

This action arises from plaintiff Linda Coollick's claim that defendant Abigail Hughes deprived her of her rights guaranteed by the Fourteenth Amendment to the United States Constitution by terminating her.  Now pending before the Court is defendant's motion for summary judgment (Doc. #30).  For the following reasons, defendant's motion will be denied.

The Court has jurisdiction over plaintiff's claim pursuant to 28 U.S.C. § 1331.

**BACKGROUND**

The parties have submitted briefs, a statement of facts and supporting exhibits, which reflect the following factual background.

Plaintiff was employed by the State of Connecticut Department of Education beginning in 1994.  From 1994 until 1995, she was a Personnel Officer II.  From 1995 until 1998, she was an education specialist in the Bureau of Early Childhood.

In 1999, she became a school counselor at Windham Technical High School, a position she held until August 2001.  At that time, she was promoted to the position of School Guidance Coordinator at Vinal Technical High School, where she remained until

1

August 2006. Plaintiff received tenure with the Department of Education in 2003. In the 2005-2006 school year, plaintiff approached defendant Abigail Hughes, Superintendent of the Connecticut Technical High School System, regarding problems that she was having with the principal of Vinal Technical High School, Shelia Fredson. On March 8, 2006, plaintiff met with defendant to address plaintiff's problems with Ms. Fredson. Plaintiff and defendant met two or three additional times regarding these issues.

> On June 16, plaintiff sent defendant an email stating:
>
>> I just wanted to inform the both of you about my medical leave/FLMA. You both know that this year especially has been overwhelmingly difficult and I am very much in need to renew myself.
>>
>> I love working with the students and what I do in my current position but this year dealing with the hostile work environment and being the target of the principal (for the past 3 years) has really destroyed me.
>>
>> I cannot go through another year like this. I hope you understand. I am willing to return as a counselor if needed to eliminate this problem.
>>
>> I saw the part time position for Guidance Counselor at Prince, is there any way to make this full-time and consider me for the position? Just a thought!!!

In her deposition, plaintiff stated that this was the first time that the idea of her transferring from Vinal Technical was raised. A transfer to a guidance counselor position would have been a demotion for plaintiff.

On July 14, plaintiff sent an email to defendant stating, "I just wanted to check in and [find] out if there is any news about my status at Vinal or somewhere else?" Plaintiff also asked, "is there any possibility of having me go to Prince [Technical High

School] and the 32 hour position being sent to Vinal?" On August 2, defendant replied to plaintiff:

> We have created a two year durational position for a school counselor at Prince Tech. It is now posted on the intranet. You don't have to worry about it being a durational position, since it is not based on a sick leave. It is a new position we have created. When we get permanent positions, which OPM gives us each year to convert durational to permanent, we do that. Also in two years there will be multiple guidance opportunities if you do not want to remain at Prince. If this is good for you, you need to send me an email requesting a demotion from Guidance Coordinator to counselor position. At that point, I can transfer you to Prince Tech.

As of July 28, the guidance counselor position at Prince Technical High School was posted as a two-year durational position. Plaintiff then requested a demotion as instructed and agreed to accept the guidance counselor position at Prince Technical. On September 5, plaintiff was informed of her "administrative transfer" to Prince Technical effective August 25. The notice stated, "there are no changes to salary and benefits as a result of this transfer."

Plaintiff worked at Prince Technical through the 2006-2007 school year until November 13, 2007. On October 5, 2007, a durational guidance counselor position was posted for Cheney Technical High School. On October 10, defendant notified plaintiff that she was being transferred to Cheney Technical involuntarily. Plaintiff had known that a guidance counselor at Cheney Technical was on maternity leave. On October 15, plaintiff sent an email to defendant questioning, "where will I be upon the return of the counselor at the end of March 2008? Could you please clarify that for me?" In response, defendant wrote, "you would return to Prince upon her return."

On November 14, defendant informed plaintiff that the durational guidance

3

coordinator position that she held was being eliminated at the end of the 2007-2008 school year.  Plaintiff submitted applications between May and October 2008 for other positions at various technical schools.  She claims that she was denied seniority and preferential placement into any of the available vacancies.

Defendant states that she offered plaintiff another year of durational employment following the end of the 2007-2008 school year; plaintiff rejected this offer.  At a grievance hearing on September 24, 2008, the Department of Education again offered plaintiff another year of durational employment; plaintiff rejected this offer as well.

Plaintiff recognized that, as of August 2, 2006, the guidance counselor position that she accepted was durational.

At all relevant times, plaintiff was a member of the state Vocational Federation of Teachers, AFL-CIO.  She had the right, based on seniority, to transfer to a permanent vacancy that was open between March 15 and May 15 of each year.  After plaintiff was informed that her durational position was being eliminated, she filed a grievance which remains pending.  Article 11 of the Collective Bargaining Agreement ("CBA") that covered plaintiff provides that notification of vacancies arising during the summer recess would be posted on the school district's website.  Article 11 of the CBA specifies:

> Vacancies arising thereafter after May 15 and up to October 31 of the next school year shall be posted; provided, however, that internal candidates shall not have any preference for filling such vacancies based on seniority or bargaining united state. The Union president shall be sent a copy by e-mail and bargaining unit employees will receive in the following manner: (1) during the school year – via the employee's electronic mailbox; (2) during the summer recess – by posting on the school district's website.

A durational employee does not have the right to a pre-termination hearing.

## DISCUSSION

A motion for summary judgment must be granted if the pleadings, discovery materials before the court and any affidavits show that there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

A dispute regarding a material fact is genuine if there is sufficient evidence that a reasonable jury could return a verdict for the nonmoving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute.  Am. Int'l Group, Inc. v. London Am. Int'l Corp., 664 F.2d 348, 351 (2d Cir. 1981).

If a nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof, then summary judgment is appropriate.  Celotex Corp., 477 U.S. at 323.  If the nonmoving party submits evidence which is "merely colorable," legally sufficient opposition to the motion for summary judgment is not met.  Liberty Lobby, 477 U.S. at 24.  The mere existence of a scintilla of evidence in support of the nonmoving party's position is insufficient; there must be evidence on which the jury could reasonably find for him.  See Dawson v. County of Westchester, 373 F.3d 265, 272 (2d Cir. 2004).

On summary judgment, the court resolves all ambiguities and draws all permissible factual inferences in favor of the nonmoving party.  See Patterson v. County of Oneida, 375 F.3d 206, 218 (2d Cir. 2004).  If there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party on the issue on which summary judgment is sought, summary judgment is improper.

See Security Ins. Co. of Hartford v. Old Dominion Freight Line Inc., 391 F.3d 77, 83 (2d Cir. 2004).

I.     Plaintiff's Entitlement to a Pre-Termination Hearing

In the complaint, plaintiff alleges that her transfer to a durational position violated her rights under the Due Process Clause of the Fourteenth Amendment and 42 U.S.C. § 1983.

The Due Process Clause requires that, generally, a person must be afforded the opportunity for a hearing prior to being deprived of a constitutionally protected liberty or property interest.  U.S. Const. amend XIV, § 1; Bd. of Regents v. Roth, 408 U.S. 564, 569-70 & n.7 (1972).  Thus, in order to sustain an action for deprivation of property without due process of law, a plaintiff must identify a property or liberty interest, and show that the state actor has deprived her of that interest without due process.

The fundamental requisite of procedural due process is the opportunity to be heard.  See Boddie v. Connecticut, 401 U.S. 371, 377 (1971).  This opportunity must be granted within a meaningful time and manner.  Armstrong v. Manzo, 380 U.S. 545, 552 (1965).  Further, the hearing must be "appropriate to the nature of the case."  Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 313 (1950).

There is no doubt that under Connecticut law, a teacher earns tenure which creates a property interest in her continued employment.  Sekor v. Board of Education, 240 Conn. 119, 128 (1997).  Further, the parties do not dispute, and the statutory text would support, that plaintiff is a "teacher" as that term is defined in the law.  Conn. Gen. Stat. § 10-151(a)(2).  Neither party has argued that plaintiff is not covered by the law because the CBA supercedes this law.  See, e.g., Spanierman v. Hughes, 576 F. Supp.

6

2d 292 (D. Conn. 2008) (recognizing in case that collective bargaining agreement sets rules for tenure that superceded section 10-151).

Defendant argues that any tenure protection that plaintiff may have had was lost once she accepted a durational position. At that point, she became a durational employee who was not entitled to a pre-termination hearing. Plaintiff contends that her transfers did not cost her the protections of tenure.

Defendant's contention that tenure attaches to a teacher's position rather than to the individual is belied by the text of the law. The text of section 10-151 implies that tenure attaches to the individual and is not dependent on the position that she may hold. Section 10-151(a)(6)(A)'s calculation for determining tenure does not depend on whether the teacher's position is durational or open-ended. Rather, to the extent that that section requires any type of position to earn tenure, it specifies "full-time continuous employment." Neither party has proffered any evidence that plaintiff's position was not "full-time" or "continuous" as those terms are defined in the law. Further, section 10-151(d) lays out the grounds upon which a tenured teacher may be terminated and grants a tenured teacher the right to continued employment generically as a teacher, not to a specific position. See Sekor, 240 Conn. at 128. This section does not otherwise specify how a teacher's tenure may be lost. Therefore, there are material issues of fact as to whether plaintiff was entitled to a pre-termination hearing. The Court will accordingly deny summary judgment.

**II.     Qualified Immunity**

Defendant argues she is entitled to qualified immunity for the termination of plaintiff. Qualified immunity shields government officials whose conduct "does not

violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  The scope of qualified immunity is broad, and it protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986).

The test for qualified immunity is twofold.  The threshold question is whether, taken in the light most favorable to plaintiff, the facts demonstrate defendant's violation of plaintiff's rights under the Due Process Clause.  The next question is whether that right was clearly established within the specific context of the case.  In other words, the court must consider whether the constitutional right was clear enough so that a reasonable official would understand that her actions would violate that right.  Saucier v. Katz, 533 U.S. 194, 201 (2001).  The Supreme Court recently held that applying the two prong test is no longer mandatory.  Instead, the lower courts "have the discretion to decide whether that procedure is worthwhile in particular cases." Pearson v. Callahan, 129 S. Ct. 808, 818 (2009).

Thus, a qualified immunity defense is established where "(a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." Tierney v. Davidson, 133 F.3d 189, 196 (2d Cir. 1998).

The doctrine of qualified immunity recognizes that "reasonable mistakes can be made as to the legal constraints on particular ... conduct." Saucier, 533 U.S. at 205.  Qualified immunity applies if the official's mistake as to what the law requires is reasonable.  Id.  It does not apply if, on an objective basis, it is obvious that no reasonably competent official would have taken the actions of the alleged violation.

8

Malley, 475 U.S. at 341.  Summary judgment is appropriate when a trier of fact would find that reasonable officials could disagree.  Lennon v. Miller, 66 F.3d 416, 421 (2d Cir. 1995).

If the court assumes, arguendo, that plaintiff's rights were violated, it becomes necessary to determine whether a clearly established right was violated by defendants' conduct.  See Saucier, 533 U.S. at 207-08 ("[W]e will assume a constitutional violation could have occurred under the facts alleged..., then proceed to the question whether this general prohibition against excessive force was the source for clearly established law that was contravened in the circumstances this officer faced.").

At this stage, upon the evidence before the Court, it is not clear that defendant could reasonably have believed that she was not violating plaintiff's rights.  It is clearly established under the law that tenure creates a right to continued employment and that termination must be proceeded by a pre-termination hearing.  See Roth, 408 U.S. at 576-78.  If plaintiff remained tenured, then defendant would not be entitled to qualified immunity for terminating her without a pre-termination hearing.  The Court cannot find, at this stage, that reasonable officials would disagree as to whether plaintiff was protected by tenure.  Therefore, the Court finds that defendant is not entitled to qualified immunity.  See Holley v. County of Orange, 625 F. Supp. 2d 131, 142 (S.D.N.Y. 2009).  Defendant will be permitted to reassert this defense at trial.

## CONCLUSION

For the foregoing reasons, defendant's Motion for Summary Judgment (Doc. #30) is DENIED.

Dated at Bridgeport, Connecticut, this 25th day of March, 2010.

                                                /s/
                                    Warren W. Eginton
                                    Senior United States District Judge